**DeNITTIS OSEFCHEN PRINCE, P.C.**
Ross H. Schmierer, Esq. (RS7215)
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(856) 797-9951
rschmierer@denittislaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LAWRENCE LEVIN, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| VISUAL COMPUTER SOLUTIONS, INC., a New Jersey corporation, | **PUTATIVE CLASS ACTION** |
| Defendant. | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Lawrence Levin ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against defendant Visual Computer Solutions, Inc. ("VCS" or "Defendant") to stop its practice of sending unwanted autodialed text messages to cellular telephones without consent, to stop the sending of text messages to consumers registered on the do not call registry and for continuing to send text messages to consumers despite their stop requests, and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

1

## NATURE OF THE ACTION

1.      Defendant provides certain workforce management scheduling software solutions.[1]

2.      Unfortunately for consumers, however, Defendant sends text messages to consumers who have not signed up for Defendant's services.  That is, in an attempt to solicit a response from consumers who have not signed up for Defendant's services, and to ultimately increase Defendant's revenue by encouraging consumers to purchase its services, Defendant conducted (and continues to conduct) a wide-scale solicitation campaign that features the sending of repeated unsolicited text messages to consumers' cellular telephones—without prior written express consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3.      For many marketers, text message marketing is highly profitable since their open rate is significantly higher than email.  However, marketers must comply with the TCPA before sending out text messages to consumers.

4.      As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

5.      Yet, in violation of the TCPA, Defendant fails to obtain any prior express written consent to send solicitation text messages to consumers' cellular telephone numbers. Even

---

[1] https://www.linkedin.com/company/visual-computer-solutions-inc

worse, when consumers attempt to opt-out by replying STOP to the text messages, Defendant continues to send them solicitation text messages despite their stop requests.

6.      Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

## COMMON ALLEGATIONS

7.      Defendant sends text messages to consumers' cellular telephones in an attempt to solicit business and promote their scheduling software solutions.

8.      Defendant sends solicitation text messages using svcsapps@vcssoftware.com.

9.      In sending these autodialed solicitation text messages, Defendant takes no steps to acquire the oral or written prior express consent of the Plaintiff, or the Class Members who received the unsolicited text messages.

10.      Defendant made the same (or substantially the same) solicitation text message calls *en masse* to many thousands of cellular telephone numbers throughout the United States.

11.      In sending the unsolicited text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant or its agent has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making

numerous text message calls simultaneously (all without human intervention).

12.     Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also repeatedly violated the TCPA.

13.     Accordingly, by sending the unsolicited text messages at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms, and the frustration that comes in repeatedly requesting that the text messages stop, only to have them continue.

14.     Upon information and belief, and via investigation by Plaintiff's attorneys, each of the text messages sent to Plaintiff and the Classes are affiliated with Defendant.

15.     In response to Defendant's unlawful conduct; Plaintiff files this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

16.     Plaintiff Lawrence Levin is a natural person and resident of Margate, New Jersey.

17.     Defendant Visual Computer Solutions, Inc. is a domestic corporation duly organized and existing under the laws of the State of New Jersey with a principal place of business located at 4400 US Highway 9 South, Suite 3500, Freehold, New Jersey 07728.

Defendant conducts business throughout this District, the State of New Jersey, and the United States.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute.

19.    This Court has personal jurisdiction over Defendant because Defendant does significant business in the State of New Jersey, in this District, and because the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

20.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business in this District and the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Defendant resides in this District.

## FACTS SPECIFIC TO PLAINTIFF LAWRENCE LEVIN

21.    Plaintiff Levin registered his cellular telephone number on the National Do Not Call Registry on February 6, 2007 in order to stop receiving unsolicited telephone calls and text messages.

22.    On February 19, 2018 at 8:55 AM, Plaintiff received two autodialed text messages on his cellular phone from Defendant.  A screenshot of the text is presented below:



23.     On February 20, 2018 at 8:56 AM Plaintiff received an autodialed text message

on his cellular phone from Defendant.   A screenshot of the text is presented below:



24.      As is show in the image above, Plaintiff replied to the third text message on February 20, 2018 at 8:56 AM with "Stop". He did not receive any confirmation or acknowledgement that the text messages would stop.

25.      Despite Plaintiff's stop request, on February 22, 2018 at 4:17 AM, Plaintiff received two more autodialed text message on his cellular phone from Defendant.  A screenshot of the text is provided below:



26.      Further, on Friday, February 23, 2018 at 6:35 AM, Plaintiff received an autodialed text message from Defendant.  A screenshot of the text message is provided below:



27.     As is show in the image above, Plaintiff replied to the text message on February

23, 2018 at 6:35 AM with "Another texts today February 23. I wrote stop on Tuesday feb 20".

He did not receive any confirmation or acknowledgement that the text messages would stop.

28.     Again on Monday, February 26 at 9:33 AM, Plaintiff received four more

autodialed text messages from Defendant. A screenshot of the text messages is provided below:



29.     On Tuesday, February 27, 2018 at 9:57 AM and again at 4:43 PM, Plaintiff received autodialed text messages from Defendant. A screenshot of the text message is provided below:



30.     Frustrated from receiving so many unsolicited autodialed text messages, Plaintiff immediately sent two replies shown above to this text message, stating "Stop" and "Please stop sending texts".

31.     On the same day, Tuesday, February 27, 2018 at 6:12 AM, Plaintiff received another unsolicited autodialed text message from Defendant.  A screenshot of the text message has been provided below:



32.     Despite repeated attempts at getting the text messages to stop, Plaintiff received

two more text messages from Defendant on February 28, 2018 at 6:21 AM and again on March

2, 2018 at 6:12 AM.  A screenshot of the text messages has been provided below:



33.     Further, on Thursday, March 1, 2018 at 10:44 AM, Plaintiff again received three

autodialed text messages from Defendant. A screenshot of the text message is provided below:



26.     Plaintiff Levin never provided his prior express written consent to Defendant VCS to send text messages to him and has no business relationship with VCS.

27.     By sending unauthorized text messages as alleged herein, VCS has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the text messages disturbed Levin's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Levin's phone. In the present case, a consumer could be subjected to many unsolicited text messages, as VCS fails to obtain a consumers' prior express written consent before sending them solicitation text messages and continues to send consumers unwanted text messages despite the consumers' stop requests.

28.     In order to redress these injuries, Plaintiff Levin, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cellular telephones.

29.     On behalf of the proposed Classes, Plaintiff Levin seeks an injunction requiring

VCS to cease all unsolicited text messaging activities and an award of statutory damages to the

Class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

30.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)

and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of

the following two Classes:

> **Autodialed No Consent Class:** All persons in the United States who from
> a date four years prior to the filing of the initial complaint to the present:
> (1) Defendant (or a third person acting on behalf of Defendant) sent text
> messages, (2) to the person's cellular telephone number, (3) for the
> purpose of selling Defendant's products and/or services, (4) using an
> automated telephone dialing system, and (5) for whom Defendant claims it
> obtained prior express written consent in the same manner as Defendant
> claims it supposedly obtained prior express written consent to send
> automated text messages to the Plaintiff.

> **Autodialed Stop Class**: All persons in the United States who from a date
> four years prior to the filing of the initial complaint to the present: (1)
> Defendant (or a third person acting on behalf of Defendant) text messaged,
> (2) on the person's cellular telephone, (3) for the purpose of selling
> Defendant's products and/or services, (4) using an automated telephone
> dialing system, (4) after the person replied STOP to Defendant's text
> messages.

> **Do Not Call Registry Class**: All persons in the United States who (1)
> Defendant (or a third person acting on behalf of Defendant) called or texted
> more than one time on his/her cellular telephone; (2) within any 12-month
> period (3) where the cellular telephone number had been listed on the
> National Do Not Call Registry for at least thirty days; (4) for the purpose of
> selling Defendant's products and services; and (5) for whom Defendant
> claims it obtained prior express consent in the same manner as Defendant
> claims it obtained prior express consent to call the Plaintiff.

> **Do Not Call Registry Stop Class**: All individuals in the United States (1)
> who had his/her telephone number(s) registered with the National Do Not
> Call Registry for at least thirty days; (2) who received more than one
> telephone call or text message made by or on behalf of Defendant within a
> 12-month period; (3) who requested that Defendant not text them again; and

(4) who received another text from Defendant after the person informed Defendant that s/he no longer wished to receive texts from Defendant at least 30 days after requesting to no longer be texted.

31.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

32.     On information and belief, there are hundreds, if not many thousands of members of the Classes such that joinder of all members is impracticable.

33.     There are several questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class that may be answered in a single stroke include, but are not necessarily limited to the following:

(a)  whether Defendant's conduct constitutes a violation of the TCPA;

(b)  whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

(c)  whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;

(d)  whether Defendant obtained prior express written consent to contact any Class members; and

(e) to the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

34.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the transmission of the solicitation text messages alleged herein. Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting solicitation text messages. Plaintiff's claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendant's wrongful conduct. Plaintiff, like all members of the Classes, received unwanted solicitation text messages from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of himself and all absent members of the Classes.

35.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiff has no interests antagonistic to the interests of other members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Classes.

36.     The suit may be maintained as a class action under the Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief.  As the messages

continue to be sent in spite of Defendant's failure to get the consumers' prior express written consent to receive the text messages, injunctive relief is necessary and appropriate to require Defendant to discontinue sending unauthorized solicitation text messages.  Likewise, Defendant has acted and fails to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the wireless solicitation text messages at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

37.      In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited solicitation text message from Defendant. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

38.     Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

39.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

40.     Defendant and/or its agents agent transmitted unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse,* without human intervention. The telephone dialing equipment utilized by Defendants and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

41.     These solicitation text messages were made *en masse* without human intervention and without the prior express written consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation text messages.

42.     At no time did Defendant obtain prior express written consent from the Plaintiff orally or in writing to receive solicitation text messages. Also, at no time did Defendant obtain prior express written consent that contained a disclosure informing Plaintiff or any other consumer that agreeing to receive solicitation text messages was not a condition of the purchase of any property or service.

16

43.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

44.     In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed Stop Class)**

45.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

46.     Defendant sent unsolicited and unwanted text messages to telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Class on their cellular telephones after they had informed Defendant by text to stop texting them.

47.     Defendant sent the text messages using equipment that had the capacity to store or produce telephone numbers to be called and/or texted using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

48.     Defendant utilized equipment that sent the text messages to Plaintiff and other members of the Autodialed Stop Class simultaneously and without human intervention.

49.     By sending unsolicited text messages to Plaintiff and other members of the Autodialed Stop Class's cellular telephones using an automated telephone dialing system after they requested to no longer receive such calls, Defendant violated 47 U.S.C. § 227(b)(1)(B) by doing so without prior express written consent.

50.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

51.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Stop Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

52.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

53.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

54.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

55.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone

numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[2]

56.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

57.      Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

58.      Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, and by failing to internally record and honor do not call requests.

59.      Defendant made more than one unsolicited telephone call to Plaintiff and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

60.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

61.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

62.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**FOURTH CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Stop Class)**

63.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

64.     Defendant violated 47 C.F.R. §64.1200 by initiating calls for telemarketing purposes to cellular telephone subscribers such as Plaintiff and the Do Not Call Registry Stop Class who were registered on the National Do Not Call Registry and who specifically told Defendant to stop calling them, and who received two or more additional calls within a 12-month period from Defendant at least thirty (30) days after informing Defendant to stop calling them.

21

Defendant made these calls without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

65.     As a result of Defendant's unlawful conduct, Plaintiff and the Do Not Call Registry Stop Class suffered actual damages and, under section 47 U.S.C. § 227(c), Plaintiff and each member of the Do Not Call Registry Stop Class is each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

66.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Do Not Call Registry Stop Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Levin, individually and on behalf of the Classes, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Levin as the representative of the Classes and appointing his attorneys as Class Counsel;

b)  An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Classes;

c)  An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)  A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

e)  An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

f)   An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Classes;

g)   An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

h)   An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

i)   Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: March 14, 2018

**DeNITTIS OSEFCHEN PRINCE, P.C.**

By:     __s/Ross H. Schmierer_____
        Ross H. Schmierer (RS7215)
        DeNittis Osefchen Prince, P.C.
        315 Madison Avenue, 3rd Floor
        New York, New York 10017
        Telephone:  646-979-3642
        Facsimile:  856-797-9978
        rschmierer@denittislaw.com

        *Attorneys for Plaintiff and the Putative Classes*